UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHATEAU LIVING CENTER, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-3211-EEF-DEK** |
| **THE HANOVER INSURANCE COMPANY** | |

### REPORT AND RECOMMENDATION

Before the undersigned are: (1) the motion of the defendant, The Hanover Insurance Company ("Hanover"), to enforce settlement; and (2) the motion of the plaintiff, Chateau Living Center, L.L.C. ("Chateau"), to enforce settlement with statutory penalties. The motions were referred to the undersigned for a report and recommendation. Rec. doc. 138.

### BACKGROUND

On June 20, 2006, Chateau filed a complaint against Hanover for the recovery of damages attributed to Hurricane Katrina. Rec. doc. 1. On that same date, two other nursing home operators, Meadowcrest Living Center, L.L.C. ("Meadowcrest") and Colonial Living Center, L.L.C. ("Colonial"), also filed complaints against Hanover for recovery of damages attributed to Hurricane Katrina.[1] The three plaintiffs are represented by the same counsel. While the three plaintiffs describe themselves as having different ownership, Hanover describes them as having overlapping ownership. This is not disputed by the plaintiffs. The three cases were not consolidated.

The trial of the Chateau case was set for November 26, 2007. Rec. doc. 64. On Friday,

---

[1] Meadowcrest Living Center L.L.C. v. Hanover Insurance Company, 06-3210-MVL-ALC, and Colonial Living Center, L.L.C. v. Hanover Insurance Company, 06-3212-MVL-SS.

October 26, 2007, there was a settlement conference with the undersigned. Rec. doc. 89. The settlement conference was conducted by the undersigned because the assigned Magistrate Judge was unavailable on that date. The report on the conference states:

> Following discussions among the parties, a partial settlement of the above-captioned case has been reached. More specifically, all of the plaintiff's claims against Hanover Insurance Company are dismissed with prejudice, reserving all other claims asserted by Intervenor, New Leaf Restoration, Inc. The settlement discussions involving the Intervenor are ongoing.

Rec. doc. 89. On that day and in open court before the undersigned, the parties appeared and recited the terms of the settlement. Counsel for Chateau said:

> The Defendant will tender payment to the Plaintiff in the amount of $_____$[2] to be paid within 30 days of this date, and will endeavor to use its best efforts or reasonable efforts as soon as the parties are able to get together to try and assemble a settlement with respect to two other lawsuits involving two other nursing homes and this Defendant, the docket numbers of which I don't recall at this time.

Rec. doc. 139 at p. 4. In response to a question from the undersigned, counsel for Chateau identified the two other nursing homes as Meadowcrest and Colonial. Id. Counsel for Hanover provided additional identification by reference to their case numbers, 06-3210 and 06-3212. Id. Counsel for Chateau concurred and noted that the cases were filed back-to-back. Id. Counsel for Hanover agreed to the summary of the settlement terms and added that: (1) the terms were confidential; and (2) the parties would sign a formal settlement agreement "within the very near future, but no later than within 30 days from today." Id. at pp. 4-5. Relative to Meadowcrest and Colonial, the undersigned and counsel for the parties discussed procedures for settlement. Id. at pp. 5-8.

On October 30, 2007, the District Judge ordered that Chateau's claims against Hanover be dismissed without prejudice. The claims of the intervenor, New Leaf Restoration, Inc. ("New

---

[2] The dollar amount of the settlement is confidential.

Leaf"), remained in dispute.  Rec. doc. 92.  On November 29, 2007, the undersigned reported that all claims asserted by New Leaf were dismissed with prejudice.  Rec. doc. 128.  The District Judge entered an order dismissing the case without prejudice.  Rec. doc. 127.

On December 4, 2007, Hanover filed its motion to enforce the settlement.  Rec. doc. 129. On December 6, 2007, Chateau filed its motion to enforce the settlement with statutory penalties. Rec. doc. 135.  On December 9, 2007, the transcript of the October 26, 2007 proceedings was filed into the record.  Rec. doc. 139.

## ARGUMENTS OF THE PARTIES

Chateau contends that:  (1) on October 26, 2007, a settlement was achieved only for Chateau's claims against Hanover, which was not predicated or conditioned on a global settlement of the claims of all three plaintiffs; (2) the Meadowcrest and Colonial claims were separate claims by distinct entities with different ownership; (3) pursuant to Louisiana law, the dictation of the Chateau settlement has the same effect as a written settlement agreement; (4) Hanover mischaracterizes the communications between counsel after the October 26, 2007 proceedings; (5) Hanover's tender of the settlement funds was not timely; (6) Hanover's conduct was arbitrary, capricious and without probable cause; (7) pursuant to La. Rev. Stat. Ann. § 22:658, Hanover subjected itself to penalties of fifty percent on the total of the amount agreed to on October 26, 2007 plus the amount previously tendered by Hanover to Chateau.

Hanover contends that:  (1) the October 26, 2007 proceedings envisioned a formal written settlement agreement; (2) because of the overlapping ownership of the three plaintiffs, the parties agreed to continue discussions beyond October 26, 2007 to reach a global settlement; (3) in that event there would be one settlement document and one settlement check; (4) although Hanover's

efforts to pursue the global settlement after the October 26, 2007 proceedings were put-off, Chateau did not report that it wanted to conclude the settlement of its claim without regard to the claims of Meadowcrest and Colonial; (5) on November 26, 2007, Hanover forwarded a written settlement agreement; and (6) Chateau did not respond until November 28, 2007 when it demanded a reservation of its claims for penalties for failure to conclude the settlement within the deadline. Hanover urges that: (1) the October 26, 2007 proceedings did not constitute a "writing;" (2) the thirty days did not begin to run until the transcript was filed into the record on December 10, 2007; (3) La. Rev. Stat. Ann. § 22:658 does not apply; (4) the assessment of penalties under La. Rev. Stat. Ann. § 22:1220 are not automatic; and (5) the circumstances of this case do not warrant the imposition of penalties.

## ANALYSIS

1.      § 22:658 does not apply to a claim that the tender of settlement funds was not timely.

Part A of Section 658 is divided into four subsections. Subsections 1 and 2 apply to all contracts of insurance, except for life, health and accident contracts. Subsection 1 requires that the insurer pay a claim within thirty days of the receipt of proof of loss. Subsection 2 only applies to: (a) third party property damage claims; and (b) medical expense claims. It requires that all insurers shall pay the amount of such claims "within thirty days after written agreement of settlement of the claim from any third party claimant." La. Rev. Stat. Ann. § 22:658A(2). Subsection 3 provides the delays for insurers to initiate loss adjustment of a property damage claims. Subsection 4 provides a deadline for all insurers to make offers to settle property damage claims. The only subsection of Part A with a deadline for an insurer to fund a settlement agreement is subsection 2 regarding certain claims from third party claimants. Subsection 2 has no application to the Chateau/Hanover

settlement.

Part B of Section 658 is also divided into four subsections. Subsection 1 provides for penalties in some circumstances when there is a failure to make a payment as required in subsections 1, 2 and 4 of Part A.[3] As noted Subsections 1 and 4 of Part A have no application to payments due on settlement agreements with insurers. While Subsection 2 of Part A does impose a thirty day deadline for the payment of a claim after written agreement of settlement, it only applies to the settlement of third party property damage and medical expense claims. Subsection 1 of Part B has no application to the Chateau/Hanover settlement.

The remaining two parts of Section 658 are concerned with: (1) the payees on drafts and delays in the processing of checks after presentation for payment; and (2) the imposition of a requirement that repairs be made to a motor vehicle as a condition of a making a payment incident to a claim.

La. Rev. Stat. Ann. § 22:658 does not apply to Chateau's claim for penalties based on the allegation that Hanover's tender of the settlement funds was not timely.

2.     § 22:1220 applies to a claim that the tender of settlement funds was not timely.

Part A of Section 1220 provides that an insurer "owes to his insured a duty of good faith and fair dealing." La. Rev. Stat. Ann. § 22:1220A. Any insurer who breaches these duties shall be liable for any damages sustained as result of the breach. Id. Part B of Section 1220 is divided into six subsections and specifies certain acts, which "if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed" by Part A. La. Rev. Stat. Ann. § 22:1220B.

---

[3] Subsections 2, 3 and 4 of Part B are without application to the Chateau/Hanover settlement. Subsection 2 is concerned with the payment of losses resulting from fire; Subsection 3 is concerned with the suspension of payment due to arson; and Subsection 4 is concerned with the property damage claims on a personal vehicle owned by a third party claimant.

5

Subsection 2 is concerned with "[f]ailing to pay a settlement within thirty days after an agreement is reduced to writing." La. Rev. Stat. Ann. § 22:1220B(2). It is the only subsection of Part B concerned with the delay for failing to pay a settlement.

La. Rev. Stat. Ann. § 22:1220 applies to Chateau's claim for penalties based on the allegation that Hanover's tender of the settlement funds was not timely.

3.  <u>An award of penalties under Section 1220C is discretionary</u>.

Part C of Section 1220 provides that,

> In addition to any general or special damages to which the a claimant is entitled for breach of the imposed duty, the claimant <u>may</u> be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained. . . ."

La. Rev. Stat. Ann. § 22:1220C (emphasis added).[4] In <u>Sultana Corp. v. Jewelers Mut. Ins. Co.</u>, 860 So.2d 1112 (La. 2003), the Louisiana Supreme Court said, "even though the award of general or special damages, if requested, is mandatory, the trial court's grant of penalties under Subsection (C) of La.Rev.Stat. Ann. § 22:1220 is discretionary." <u>Id</u>. at 1117. In <u>Sultana</u>, the Supreme Court also held that an insurer was not required to prove entitlement to an award of general or special damages before seeking penalties or that the insurer arbitrarily or capriciously withheld the funds. <u>Id</u>. at 1118-19.

4.  <u>The circumstances do not warrant the award of a penalty</u>.

The record of the proceedings plainly demonstrates that the parties reached agreement to settle all of Chateau's claims <u>and</u> to promptly pursue negotiation of settlements in the Meadowcrest and Colonial cases. The representations concerning the settlement negotiations for Meadowcrest

---

[4] The remaining parts of Section 1220 have no application to the Chateau/Hanover settlement. Part D demonstrates that Section 1220 has no application to health and accident policies; Part E was repealed in 1997; and Part F provides that the Insurance Guaranty Association Fund is not liable for any special damages awarded under Section 1220.

and Colonial were made by their counsel with representatives of persons having substantial ownership interests in those entities present in the courtroom. There was no dissent. Chateau has not submitted any written evidence that it attempted to negotiate a settlement of the Meadowcrest and Colonial claims following the October 26, 2007 proceedings.

Hanover contends that on Monday, November 26, 2007, after it was told that counsel for Chateau could not participate in settlement discussions on Meadowcrest and Colonial, it transmitted a written settlement agreement to counsel for Chateau. Rec. doc. 129 at p. 2. Chateau disputes this description of the events. It contends that there was no telephone conversation between counsel for the parties on November 26, 2007. Rec. doc. 135 at p. 4. The first written communication from Honover's counsel to Chateau's counsel is an e-mail dated November 29, 2007, which transmitted a draft of the Chateau settlement agreement and reported that the settlement check would be delivered after the release was signed. Rec. doc. 135 (Exhibit 1). Even if Chateau's description of the events of November 26, 2007 is accepted, the circumstances presented by it do not demonstrate that a penalty should be awarded in this case.

5.      <u>A settlement reached in open court is not a writing for purposes of Section 1220</u>**.**

Assuming <u>arguendo</u> that Section 1220's penalty provision is mandatory, the issue is whether the proceeding in open court on October on October 26, 2007 constitutes an agreement which was reduced to writing for purposes of Section 1220. In <u>Fruge v. Classic Communications, Inc</u>., 893 So.2d 222, 226 (La. App. 3rd Cir. 2005), and <u>Guilbeau v. Ramsay</u>, 870 So.2d 568 (La. App. 3rd Cir. 2004), Louisiana's Third Circuit Court of Appeal determined, for purposes of La. Rev. Stat. Ann. § 22:1220, that a settlement read into the record in open court satisfies the requirement of being reduced to writing. In <u>Batson v. S. La. Med. Center</u>, 724 So.2d 782, 789 (La. App. 1st Cir. 1998),

7

Louisiana's First Circuit Court of Appeal reached a different result. It determined that a settlement was not reduced to writing until it was transcribed. The Louisiana Supreme Court has not considered the issue. Batson expresses the better view. Section 1220 states, "reduced to writing." La. Rev. Stat. Ann. § 22:1220B(2). If the parties only dictate the settlement on the record, there is no writing. Until it is transcribed, disputes are more likely to arise as to its terms.

The proceeding on October 26, 2007 was not transcribed until December 9, 2007. Prior to its transcription, Hanover sent counsel for Chateau a draft of the settlement agreement on November 29, 2007. The settlement agreement was reduced to writing on November 29, 2007. Hanover filed its motion to enforce the settlement within five days of that date or less then thirty days after the agreement was reduced to writing.

## RECOMMENDATION

IT IS RECOMMENDED that: (1) Hanover's motion to enforce settlement (Rec. doc. 129) be GRANTED; and (2) Chateau's motion to enforce settlement with statutory penalties (Rec. doc. 135) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 2nd day of June, 2008.

                                         **SALLY SHUSHAN**
                                         **United States Magistrate Judge**