UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHATEAU LIVING CENTER, L.L.C | * | CIVIL ACTION |
| VERSUS | * | NO. 06-3211 |
| HANOVER INSURANCE COMPANY | * | SECTION "L"(3) |

## ORDER & REASONS

Before the Court are several motions related to a settlement agreement reached by the parties, including the Defendant's Motion to Enforce the Settlement (Rec. Doc. 129), the Plaintiff's Motion to Enforce the Settlement with Statutory Penalties (Rec. Doc. 135), and the Plaintiff's Objection to the Magistrate Judge's Report and Recommendation (Rec. Doc. 151). For the reasons listed below, the Defendant's motion IS GRANTED, the Plaintiff's motion IS DENIED, and the Court ADOPTS AND APPROVES the Magistrate Judge's Report and Recommendations.

I. FACTUAL BACKGROUND

This case arises out of an insurance dispute over damages caused by Hurricane Katrina. On June 20, 2006, Chateau Living Center ("Chateau") filed a complaint against Hanover Insurance Company ("Hanover") for recovery of hurricane-related damages to Chateau's nursing home facilities. On the same day, two other nursing home operators—Meadowcrest Living Center, LLC ("Meadowcrest") and Colonial Living Center, LLC ("Colonial")—also filed complaints against Hanover for hurricane-related damages. The three nursing home operators are all represented by the same counsel and appear to have overlapping ownership.

On October 26, 2007, the parties in the instant case participated in a settlement conference before Magistrate Judge Shushan.  The report on the settlement conference indicates that the parties reached an agreement in principle.[1]  On the same day, the parties appeared in open court and recited the terms of the settlement agreement for entry into the record:

> The Defendant will tender payment to the Plaintiff in the amount of $_____[2] to be paid within 30 days of this date, and will endeavor to use its best efforts or reasonable efforts as soon as the parties are able to get together to try and assemble a settlement with respect to two other lawsuits involving two other nursing homes and this Defendant…

(Rec. Doc. 139).  Counsel for Hanover agreed to the summary of the settlement terms and added that the parties would sign a formal settlement agreement "within the very near future, but not later than within 30 days from today." *Id.*  Counsel for both parties indicated that they would continue to pursue settlement procedures for Meadowcrest and Colonial, the other nursing home operators that had filed similar complaints against Hanover.  *Id.*

On October 30, 2007, Chateau's claims against Hanover were dismissed without prejudice, leaving only the intervenor's claims to be resolved.  On November 26, 2007, upon receiving notice that all claims had been settled, the Court dismissed the case without prejudice.  Although there is some dispute as to what happened next, the record indicates that Hanover filed a motion to enforce the settlement on December 4, 2007, after it had attempted without success to tender payment to Chateau.  For its part, Chateau refused to accept the settlement payment and on December 6, 2007, Chateau filed a motion to enforce the settlement with statutory penalties.  Chateau argues that the Court should assess statutory penalties against Hanover for its failure to

---

[1] The settlement conference report states: "Following discussions among the parties, a partial settlement of the above-captioned case has been reached.  More specifically, all of the plaintiff's claims against Hanover Insurance Company are dismissed with prejudice, reserving all other claims asserted by Intervenor, New Leaf Restoration, Inc.  The settlement negotiations involving the Intervenor are ongoing."  (Rec. Doc. 89).

[2] The amount of the settlement is confidential and is not included in this Order.

timely pay within thirty days of the date that the settlement had been entered into in open court. Alternatively, Chateau argues that the settlement agreement constituted "proof of loss" sufficient to trigger a separate thirty-day timeline for payment that Hanover also failed to satisfy.

The Court referred the dispute to the Magistrate Judge who had initially guided the parties through the settlement negotiations. On June 2, 2008, the Magistrate Judge issued a Report and Recommendations finding that Hanover's motion to enforce the settlement should be granted and Chateau's motion to enforce the settlement with statutory penalties should be denied. (Rec. Doc. 150). Specifically, the Magistrate Judge reasoned that the settlement agreement reached in open court did not constitute "a writing" for purposes of Louisiana Revised Statute § 22:1220. The Magistrate Judge also noted that Hanover had not acted arbitrarily, capriciously, or without probable cause, as evidence in the record suggests that the parties had contemplated pursuing a global settlement resolving the three related claims together. Accordingly, the Magistrate Judge concluded that the particular circumstances of the case did not warrant the discretionary imposition of statutory penalties.

## II.   LAW & ANALYSIS

Before reviewing the legal challenges raised by the parties, it is appropriate for the Court to address briefly the applicable standard of review. Magistrate judges are empowered by statute to preside over certain pretrial matters upon appointment by a district judge. 28 U.S.C. § 636(b)(1)(A). A district court evaluating a magistrate judge's recommendation may adopt those portions of the recommendation to which no specific objection is made, as long as those sections are not clearly erroneous. 28 U.S.C. § 636(b)(1)(C); FED.R.CIV.P. 72(b). However, where a party makes "specific, written objections" within ten days after being served with a copy of the

magistrate's recommendations, the district court must undertake *de novo* review of those contested aspects of the report. 28 U.S.C. § 636(b)(1)(C); FED.R.CIV.P. 72(b). The district judge may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." FED.R.CIV.P. 72(b).

Chateau objects to the Magistrate Judge's Report and Recommendations on two grounds. First, Chateau argues that the Magistrate Judge incorrectly found that the recitation of a settlement agreement in open court does not constitute an agreement reduced to writing for purposes of imposing statutory penalties under Louisiana law. Second, Chateau argues that, regardless of whether the recitation reduced the agreement to writing, the settlement agreement itself provided Hanover with proof of loss sufficient to trigger statutory deadlines for payment of a claim under Louisiana Revised Statutes §§ 22:658 and 22:1220. The Court will address each of these arguments in turn.

Louisiana law provides that statutory penalties may be assessed against insurers in certain situations for failure to timely resolve claims or pay settlements. For example, Louisiana Revised Statute § 22:658(B) states that:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefore or … failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty….

LA. REV. STAT. ANN. § 22:658(B). Similarly, Louisiana Revised Statute § 22:1220(B) states:

> Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed … (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing…. (5) Failing to pay the amount of any claim due any person

> insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause…

LA. REV. STAT. ANN. § 22:1220(B).  Although the two statutes are similar, they differ from one another in significant ways.  For example, § 22:1220(B)(2) requires that the agreement be reduced to writing but does not require that the insurer's actions in withholding settlement funds be arbitrary, capricious, or without probable cause.  *See Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360, p. 13 (La. 12/3/03); 860 So. 2d 1112, 1119 ("The Legislature did not require [proof that an insurer acted arbitrarily, capriciously, or without probable cause] with regard to the timely payment of settlement funds.  Rather Section (B) simply requires that the insured or claimant must show that failure of an insurer to timely pay the settlement be 'knowingly committed.'").

As an initial matter, the Court agrees with the Magistrate Judge's finding that, for purposes of imposing statutory penalties under Louisiana law, a settlement entered into in open court is not reduced to writing until the transcript is entered into the record or is otherwise supplied in written form.  *See Batson v. S. La. Med. Ctr.*, 97-1382, pp. 13-14 (La. App. 1 Cir. 9/25/98); 724 So. 2d 782, 789 (finding that a settlement agreement recited in open court was not "reduced to a writing" for purposes of invoking statutory deadlines to pay settlement amount until the transcription was entered into the record).  In *Batson*, the parties entered into a settlement agreement in open court.  *Id.*  The written transcription of the parties' agreement was entered into the record approximately one week later.  *Id.*  For purposes of assessing statutory penalties, the court in *Batson* found that the "transcribed settlement agreement [was] equivalent to a settlement agreement reduced to writing."  *Id.*

In light of the unresolved split in the Louisiana Courts of Appeal regarding this issue, the Court finds that *Batson* presents the better view.[3]  Louisiana Civil Code Article 3072 provides that a settlement or "compromise shall be made in writing or recited in open court."  LA. CIV. CODE ANN. art. 3072.  Louisiana Revised Statute § 1220(B)(2), however, imposes statutory penalties only for an insurer's failure to tender payment thirty days after the agreement has been "reduced to writing."  LA. REV. STAT. ANN. § 22:1220(B)(2).  The careful distinction highlighted by these statutes is particularly appropriate in light of Louisiana courts' frequent admonition that statutory penalties such as those set forth in § 1220(B) are to be strictly construed and should not be imposed lightly.  *See, e.g., Scott v. Ins. Co. of N. Amer.*, 485 So. 2d 50, 52 (La. 1986) ("Since this statutory provision is penal in nature, it is to be strictly construed and the stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for nonpayment").  The Revision Comments to Article 3072 provide further support for this viewpoint:

> This Article preserves the requirement of Article 3071 of the Louisiana Civil Code of 1870 that a compromise must be reduced to writing. It is not intended to change the law…. When the parties reach a valid oral settlement in court they may mutually compel each other *to reduce the agreement to writing*.

LA. CIV. CODE ANN. art. 3072, Revision Comment "B" (emphasis added).  The Comments clearly distinguish between a "valid oral settlement in court" and a settlement that has been reduced to writing.  In addition, without an actual record of the settlement agreement, the parties may disagree over the precise terms of the agreement and courts would face considerable

---

[3] *Compare Batson*, 724 So. 2d at 789 (holding that settlement agreement entered into in open court was not reduced to writing until written transcription was entered into the record), *with Fruge v. Classic Commc'ns, Inc.*, 04-1348, pp. 4-6 (La. App. 3 Cir. 2/2/05); 893 So. 2d 222, 226 (holding that settlement agreement was reduced to writing when it was entered into in open court).  The Louisiana Supreme Court has not yet addressed the issue.

difficulty in attempting to enforce those terms. (Rec. Doc. 150).[4] The Court agrees with the view set forth in *Batson* and finds that the settlement agreement in this case was not reduced to writing for purposes of triggering statutory deadlines until at least November 29, 2007, when counsel for Hanover forwarded a draft of the agreement to counsel for Chateau. Because Hanover moved to enforce the settlement and attempted to tender payment on December 4, 2007, the Court finds that Hanover satisfied the statutory requirements and therefore the imposition of sanctions would be inappropriate.

Second, Chateau argues that it is immaterial whether the settlement agreement was reduced to writing when the parties recited it in open court because the fact that the parties agreed to a settlement at all constitutes sufficient proof of loss to trigger the relevant statutory guidelines under §§ 22:658 and 22:1220(5). Under close scrutiny, however, Chateau's novel theory rings hollow. The plain statutory language of § 22:1220 makes a clear distinction between settlement agreements and proofs of loss.[5] Chateau, however, asks this Court to conflate the two, and cites a single case for the proposition that the proof of loss requirement is "flexible." *See Sevier v. U.S. Fidelity & Guaranty Co.*, 497 So. 2d 1380, 1384 (La. 1986). Contrary to Chateau's interpretation, however, the court in *Sevier* did not hold that the phrase "proof of loss" may be interpreted to mean something entirely different—such as, for example, a settlement agreement. *Id.* Rather, the *Sevier* court merely held that, under a flexible approach to

---

[4]In the Report & Recommendations, the Magistrate Judge stated: "If the parties only dictate the settlement on the record, there is no writing. Until it is transcribed, disputes are likely to arise as to its terms." *Id.*

[5] *Compare* La. Rev. Stat. § 1220(B)(2) (providing that statutory penalties may be assessed for the insurer's failure "to pay a settlement within thirty days after an agreement is reduced to writing") *with* La. Rev. Stat. § 1220(B)(5) (providing that statutory penalties maybe assessed for the insurer's failure to "pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause").

proof of loss determinations, a handwritten estimate of repair costs may satisfy the requirements for triggering statutory deadlines.  *Id.*  As a result, Chateau's argument misinterprets Louisiana law and does not provide a basis for assessing statutory penalties against Hanover.

Finally, even if Chateau's novel theory were supported by law, Hanover did not act arbitrarily, capriciously, or without probable cause in briefly attempting to pursue the resolution of the similarly-situated claims.  Under Louisiana law, the determination of whether an insurer acted arbitrarily, capriciously, or without probable cause in failing to timely respond to an insured's proof of loss necessarily depends on the facts of each individual case.  *See Roberie v. S. Farm Bureau Cas. Ins. Co.*, 194 So. 2d 713, 716 (La. 1967) ("A determination as to what constitutes bad faith or lack of good faith depends on the facts and circumstances of each case."); *see also Combetta v. Ordoyne*, 04-2347, pp. 8-11 (La. App. 1 Cir. 5/5/06); 934 So. 2d 836, 842-43 ("In order to determine whether or not an insurer acted reasonably and in good faith in negotiating and settling a claim, one must look to the facts of the individual case.").  Moreover, in bad faith actions against an insurer, the insured bears a considerable burden because "the insured is seeking extra-contractual damages, as well as punitive damages."  *See Lewis v. State Farm Ins. Co.*, 41-527, p. 25 (La. App. 2 Cir. 12/27/06); 946 So. 2d 708, 725.  The insured must prove that the "insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse."  *See Holt v. Aetna Cas. & Sur. Co.*, 28450-CA, p. 18 (La. App. 2 Cir. 9/3/96); 680 So. 2d 117, 130.

Turning to the instant case, the Court finds that there is ample evidence in the record to suggest that the parties contemplated resolving the similarly-situated claims together.  When it became clear that the parties would not be able to achieve such a resolution, counsel for Hanover

promptly attempted to enforce the settlement and tender payment of the settlement funds. Chateau rejected the tender and moved for the imposition of statutory penalties. As a result, the Court finds that Hanover did not act arbitrarily, capriciously, or without probable cause.

## III.   CONCLUSION

For the reasons listed above, IT IS ORDERED that the Defendant's Motion to Enforce the Settlement IS GRANTED; the Plaintiff's Motion to Enforce the Settlement with Statutory Penalties IS DENIED; and the Court ADOPTS AND APPROVES the Magistrate Judge's Report and Recommendations.

New Orleans, Louisiana, this 22nd day of September, 2008.

_____
UNITED STATES DISTRICT JUDGE